UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
Bobby Jones,                                         :

                  Plaintiff,    :    REPORT & RECOMMENDATION

       - against -                      :    08 Civ. 7125 (SCR) (LMS)

M.M.O. Music Group,                                  :

                 Defendant.   :
------------------------------------------------------x

TO:   THE HONORABLE STEPHEN C. ROBINSON

     Plaintiff Bobby Jones, proceeding *pro se*, brings this action against Defendant MMO Music Group ("MMO"), asserting claims of discrimination based on race, color, and age, in violation of Title VII, the Age Discrimination in Employment Act ("ADEA"), and the New York State Human Rights Law.  Amended Complaint, Docket # 4.  Now before the Court is MMO's motion for summary judgment.  Docket # 17.  For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion should be granted, and the action should be dismissed.

## BACKGROUND

     MMO is a corporation that has been in the music publication industry since 1950. Plaintiff's Local Rule 56.1 Statement ("Pl.'s 56.1") (Docket # 23) ¶ 2.  Irv Kratka ("Kratka") is the President/CEO of MMO.  Affidavit of Irv Kratka ("Kratka Aff.") (Docket # 21) ¶ 1.  Kratka hired Plaintiff as a shipping clerk on November 22, 2006.  Pl.'s 56.1 ¶ 3; but see Defendant's Local Rule 56.1 Statement ("Def.'s 56.1") (Docket # 20) ¶ 3 (Plaintiff was hired on November 21, 2006).  Plaintiff claims that, as the only African-American male employed by MMO, he was "singled out from the beginning."  Pl.'s 56.1 ¶ 13.  After approximately seven months at MMO,

Plaintiff's employment was terminated on June 11, 2007. Id. ¶ 5; but see Def.'s 56.1 ¶ 5 (Plaintiff was terminated on June 10, 2007). According to MMO, Plaintiff was terminated because he verbally assaulted Kratka during two telephone conversations on June 10, 2007. Def.'s 56.1 ¶ 4. According to Plaintiff, during their telephone conversation, he caught Kratka in a lie, and Kratka threatened that if Plaintiff came to work that Monday morning, the police would be there to arrest him. Pl.'s 56.1 ¶ 4. Plaintiff claims he felt that he was discriminated against "solely because of the color of my skin. It had absolutely nothing to do with my work ethics. I was ridiculed, badgered and belittled in many, many ways and I caught Mr. Kratka in a bold face lie. He then threatened me with the police. This is all because of the fact that he was going after Ms. Pritchard[1] and I caught him." Id. ¶ 14.

Following his termination, Plaintiff filed a Verified Complaint with the New York State Division of Human Rights ("NYSDHR"). Bonnist Affirmation (Docket # 19) Ex. A. The NYSDHR held a conference in the matter on October 16, 2007. Id. Ex. B. The NYSDHR issued a Determination and Order After Investigation on February 21, 2008, finding no probable cause to believe that MMO had engaged in "the unlawful discriminatory practice complained of," i.e., there was insufficient evidence "to support that the complainant's race was a factor in his termination from employment." Id. Ex. C. Plaintiff disputes this determination, claiming that he was not granted a fair hearing by the NYSDHR since Kratka appeared and gave a statement in the morning, but Plaintiff did not appear until the afternoon. See Pl.'s 56.1 ¶¶ 8-9. On April 15, 2008, the Equal Employment Opportunity Commission adopted the findings of the NYSDHR

---

[1]Sabrina Pritchard is Plaintiff's girlfriend and is the plaintiff in a separate lawsuit against MMO, Pritchard v. MMO Music Group, 08 Civ. 7129 (SCR)(LMS).

and issued Plaintiff a "Dismissal and Notice of Rights," or "right-to-sue" letter.  Bonnist Affirmation Ex. D.  Plaintiff commenced this action on August 11, 2008.  Docket # 2 (Complaint).

## DISCUSSION

I.      **Standard for Summary Judgment**

Under Rule 56, summary judgment should be "rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986).

> Upon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement may constitute grounds for denial of the motion.

Local Civ. R. 56.1(a).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law.  See Anderson, 477 U.S. at 250.  The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact.  Id.

Where a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P.

56. Under Local Rule 56.1(b), the papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.  Local Civ. R. 56.1(b).  Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' "  Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original).  Indeed, if the party opposing summary judgment does not respond to the motion, "summary judgment should, if appropriate, be entered against the adverse party."  Fed. R. Civ. P. 56(e).  However, even where the nonmoving party fails to respond to a motion for summary judgment, the court

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*.

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)) (emphasis in original).

Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor."  Mount Vernon Fire Ins. Co. v. Belize NY, Inc., 277 F.3d 232, 236 (2d Cir. 2002); Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see

also Anderson, 477 U.S. at 261 n.2.  Thus, "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992) (quoting H.L. Hayden Co. v. Siemans Med. Sys. Inc., 879 F.2d 1005, 1011 (2d Cir. 1989)).

Lastly, in a case such as this, where a *pro se* litigant is involved, "although the same standards for dismissal apply, a court should give the *pro se* litigant special latitude in responding to a summary judgment motion." McDowall v. Metro. Corr. Ctr., No. 08-Civ-8329, 2010 WL 649744, at *3 (S.D.N.Y. Feb. 22, 2010)[2] (citing McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir.1999) (courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest' ") (citation omitted)).  "In particular, the *pro se* party must be given express notice of the consequences of failing to respond appropriately to a motion for summary judgment." Id. (citing Local Civil Rule 56 .2; McPherson, 174 F.3d at 281; Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620-621 (2d Cir.1999)).

Here, MMO served Plaintiff with a Notice to Pro Se Litigant, Docket # 22, which advised him of the procedures for responding to the motion, including the requirement that he submit counter-evidence, and provided him with copies of Rule 56 and Local Rule 56.1.

## II. Plaintiff's Age Discrimination Claims

As an initial matter, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's claim for age discrimination under the ADEA should be dismissed since it is undisputed that MMO had fewer than 20 employees during 2006 and 2007, and thus, MMO

---

[2]Copies of all unpublished opinions cited in this Report and Recommendation are attached hereto.

is not subject to liability under the statute. See Pl.'s 56.1 ¶ 6; 29 U.S.C. § 630(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . . .").

Moreover, while Plaintiff's Amended Complaint appears to assert a claim of age discrimination under the New York Human Rights Law (he checked off that his claims were being brought pursuant to that statute as well), there are absolutely no allegations in either his Amended Complaint, his interrogatory responses, or his Affirmation in Opposition to Motion regarding discrimination based on age. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's claim of age discrimination under the New York Human Rights Law should be dismissed as well.

### III.     Plaintiff's Race Discrimination Claims

As for Plaintiff's race discrimination claims under Title VII and the New York Human Rights Law, they are evaluated in accordance with the "burden-shifting" framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). See Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008).[3] "Under these cases, the plaintiff bears the initial burden of establishing

---

[3]The same legal analysis applies to Title VII and New York Human Rights Law claims. See Song v. Ives Labs., Inc., 957 F.2d 1041, 1046 (2d Cir. 1992). However, the Court notes that Plaintiff's race discrimination claim under the New York Human Rights Law should be dismissed in any event due to Plaintiff's election of remedies. See N.Y. Exec. Law § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . provided that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall

a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action. If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of racial discrimination. 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " Id. (quoting McDonnell Douglas, 411 U.S. at 802 and Burdine, 450 U.S. at 253).

### *Prima Facie Case of Discrimination*

To meet his or her burden of proving by a preponderance of the evidence a prima facie case of discrimination, a plaintiff "must show: (i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (internal quotation marks and citations omitted). "Generally speaking, a plaintiff's burden of establishing a prima facie case in the context of employment discrimination law is 'minimal.' " Id. (citation omitted).

While for purposes of this motion, MMO concedes that Plaintiff can establish the first three elements of a prima facie case, MMO argues that Plaintiff's prima facie case fails because

---

maintain all rights to bring suit as if no complaint had been filed with the division."); Johnson v. County of Nassau, 411 F. Supp. 2d 171, 184 (E.D.N.Y. 2006) ("[O]nce a complainant elects the administrative forum by filing a complaint with the NYSDHR, a subsequent judicial action on the same complaint is generally barred unless one of the three exceptions in the statute is applicable. The bar to suit is jurisdictional.") (citations omitted). Here, in light of Plaintiff's election to present his race discrimination claim under the state human rights law to the NYSDHR for adjudication, and the fact that none of the three exceptions set forth in Section 297(9) is applicable, the Court lacks subject matter jurisdiction over this claim.

he cannot establish the fourth element, namely, that his employment was terminated under circumstances giving rise to an inference of discrimination.[4]  Indeed, there is no evidence in the record from which one could infer that Plaintiff was fired for a discriminatory reason.  Rather, the allegations in the Amended Complaint[5] and Plaintiff's interrogatory responses are contradictory regarding his treatment during his employment at MMO, and his allegations of discrimination based on race are conclusory.

Thus, while Plaintiff states that he was the only African-American male at MMO and alleges that he was "targeted from day one, I was talked about, ridiculed and they tried to keep me away from the other employees," Interrogatories (Docket # 23) ¶ 7, he has submitted no

---

[4] While in both the Amended Complaint and his interrogatory responses Plaintiff alleges discriminatory conduct aside from his termination, see, e.g., Amended Complaint Section II.A. (discriminatory conduct included unequal terms and conditions of employment, retaliation, and accusations against him of sexual harassment), he fails to allege any adverse employment action taken against him apart from termination.  See Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) ("Employment actions that we have deemed sufficiently disadvantageous to constitute an adverse employment action include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.") (internal quotation marks and citations omitted).  To the extent that Plaintiff seeks to allege a separate claim of retaliation, there are simply no allegations, or evidence, to support such a claim. See, e.g., Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205-06 (2d Cir. 2006) (to present a prima facie case of retaliation under Title VII, "a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII . . ., [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.") (citations omitted).

[5] MMO argues that the action should be dismissed because Plaintiff failed to file his Amended Complaint within the 60-day period he was granted by Judge Wood's Order dated August 11, 2008 (Docket # 3).  However, Plaintiff attributes the delay to the fact that he had been evicted from his apartment and did not receive any mail until he was able to relocate.  Pl.'s 56.1 ¶¶ 12, 14.  Under the circumstances, and because Plaintiff is proceeding *pro se*, the Court declines to recommend that the action should be dismissed on this ground.

evidence to show that he was subjected to disparate treatment based on his race.[6] "A showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his [or her] protected group – is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks and citation omitted). There is no evidence in the record that there were any similarly situated employees at MMO who were treated any differently from Plaintiff.

Plaintiff alleges that Patricia Kratka, Kratka's wife, harassed and bothered him, but there are few allegations regarding any direct interaction between them, nor is there any evidence, let alone an allegation, that she was involved in the decision to terminate Plaintiff's employment. Rather, Plaintiff alleges that she made negative comments about Plaintiff to her husband, but that Kratka was dismissive of them. See, e.g., Amended Complaint, Section II.E. ("Irv came to me on many occasions and said to me he spoke to his wife again and told her 'Why don't you leave that guy alone already. He is doing a great job.' "); Interrogatories ¶ 7 (Mr. and Mrs. Kratka "use[d] to argue all the time because she did not want me there. I use[d] to hear her all the time. She was only there on Tuesdays. Mr. Krataka [sic] came to me on several different occasions and

[6]Other examples of conclusory allegations of race discrimination include an allegation in the Amended Complaint that in early February, 2007, Steve Ross, Vice President of Sales, told Plaintiff, "I know you can defend yourself," and when asked what that meant, he told Plaintiff, " 'You will see[.] [J]ust stick around for awhile[.] [I] know them.' I left it alone. This is another reason why I feel like I was being discriminated against because of my race." Amended Complaint, Section II.E. Similarly, in his interrogatory responses Plaintiff alleges, "As time went on things got worse and worse. When Mr. Krataka [sic] started going after Ms. Pritchard, I was getting angrier. We both did nothing. We were the first ones there everyday and the last ones to leave. This had nothing to do with our work ethics; this was strictly because of the color of my skin." Interrogatories ¶ 7.

told me I know you heard us arguing, I said I heard everything. I could here [sic] her now . . . 'I don't want no niggers in my warehouse.'[7] Mr. Krataka [sic] would tell me to hang in there and I would just walk away.").

 Despite allegations insinuating that Plaintiff was being discriminated against because of his race, e.g., that he felt as if he was not part of the team (Amended Complaint, Section II.E.); that throughout his employment at MMO, no one would eat lunch with him (id.); that one day when he was working alone in the warehouse, they checked the inventory three times because they were trying to set him up (Interrogatories ¶ 7) – such allegations are contradicted by other allegations, e.g., that "Paul, my supervisor was good to me. . . . Paul explained to me on numerous occasions on [sic] what a fantastic job I was doing" (Amended Complaint, Section II.E.); that by late March/early April Plaintiff knew the whole warehouse system, and on a few occasions when his supervisor was out, Plaintiff ran the place himself (id.); that "Irv came to me on many, many occasions 'Bobby you are doing such a great job and I can't believe how fast you

---

[7] This is the only racially-motivated conduct alleged with any specificity. "Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." Posner v. Sprint/United Mgmt. Co., 478 F. Supp. 2d 550, 557 (S.D.N.Y. 2007) (citations omitted). "In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider the following factors: (1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." Id. (citations omitted). In this case, there is no evidence that Mrs. Kratka was a decisionmaker at MMO; there is no evidence regarding when this comment was made, nor is there evidence that it was made at or about the time of Plaintiff's termination; and there is no evidence that it had anything to do with Plaintiff's termination. Indeed, as previously noted, Plaintiff alleges that Mr. Kratka, who was the decisionmaker, disagreed with his wife's sentiments about Plaintiff.

learned this system.[']" (id.); and that a few days after he was wrongfully accused of sexual harassment, Irv Kratka told him, "Don't worry a few people are on your side," and then work continued "as usual" (id.). Moreover, while Plaintiff alleges that Kratka discriminated against him based on race when he terminated Plaintiff's employment, Plaintiff also alleges that Kratka hired him, hired his girlfriend (who is also African-American), and lent Plaintiff and his girlfriend money to pay their rent. See id. With respect to the termination of Plaintiff's employment, there are allegations concerning a heated discussion on the telephone between Kratka and Plaintiff, but there are no allegations regarding his termination from which one could infer discrimination.

Plaintiff's race discrimination claims are additionally weakened by what is known as the "same actor inference," i.e., he was hired and fired by the same person within a relatively short period of time. "The Second Circuit has held that certain circumstances surrounding termination decisions strongly suggest that invidious discrimination was unlikely, including when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to him [or her] an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring." Anderson v. Hertz Corp., 507 F. Supp. 2d 320, 329-30 (S.D.N.Y. 2007) (internal quotation marks and citations omitted), aff'd, 303 F. App'x 946 (2d Cir. 2008). In this case, since it is undisputed that Plaintiff was hired by Irv Kratka in November, 2006, and was fired by Irv Kratka only seven months later, in June, 2007, see Pl.'s 56.1 ¶¶ 3, 5, "the 'same actor' inference clearly applies here to further cast doubt on any potential inference of invidious discrimination in Plaintiff's termination." Anderson, 507 F. Supp. 2d at 330.

In light of Plaintiff's failure to establish the fourth element of a prima facie case, I conclude, and respectfully recommend that Your Honor should conclude, that MMO is entitled to summary judgment on Plaintiff's claims of race discrimination under both Title VII and the New York Human Rights Law.

## **CONCLUSION**

For the foregoing reasons, I respectfully recommend that Your Honor should grant MMO's motion for summary judgment (Docket # 17), and the action should be dismissed.

## **NOTICE**

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) working days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Stephen C. Robinson at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson and should not be made to the undersigned.

Dated: March 23, 2010
      White Plains, New York

                                  Respectfully submitted,

                                  Lisa Margaret Smith
                                  United States Magistrate Judge
                                  Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Stephen C. Robinson, U.S.D.J.

Bobby Jones
80 School Street, Apt. 5K
Yonkers, NY 10701

Craig Bonnist, Esq.
Bonnist & Cutro, LLP
800 Westchester Avenue, Suite S-332
Rye Brook, NY 10573